IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | :Criminal No. |
| | : |
| v. | :10-cr-00721-01 |
| | : |
| WILLIAM CORCORAN, JR. | : |
| a/k/a Jelly Roll | : |

**SENTENCING MEMORANDUM OF DEFENDANT,
WILLIAM CORCORAN, JR. a/k/a JELLY ROLL**

**AND NOW COMES,** your Defendant, William Corcoran, by and through his counsel, Randolph L. Goldman, Esquire, hereby moving this Honorable Court to consider the enclosed arguments contained herein in support of Defendant, William Corcoran:

**I.   PERSONAL BACKGROUND**

Defendant, William Corcoran is fifty-seven (57) years of age, was born in Baltimore Maryland and is a high school graduate.  Beginning in 1986, defendant began working at the Boeing Company as a plaster pattern maker, ultimately becoming a maintenance carpenter, and working specifically in the wood shop.  Defendant was suspended in 2011 after having worked at Boeing twenty-five (25) years.  He retired from Boeing in February, 2012.

Defendant was married previously and had one child, William J. Corcoran, II who is currently twenty eight (28) years of age.  Defendant was in a relationship with another woman and had two (2) children, although never married.  The children are Allyce Corcoran, aged twenty-two (22) and Colin Corcoran, aged twenty (20).  The relationship lasted approximately

1

nine (9) years. Allyce currently works at Boeing. Defendant is currently married to Lisa Horst for the past thirteen (13) years. They have two (2) children, Alexis Corcoran, aged twelve (12) and Ryan Corcoran, and aged five (5). Ms. Horst currently works for Toys R Us. Corcoran and Ms. Horst and his youngest children currently reside in Glenolden, Pennsylvania in a house owned by his mother. Defendant provides some financial support for his mother who is seventy-seven (77) years of age. At the time of his last full year of employment at Boeing, defendant was earning approximately $113,000.00. Defendant receives a pension from Boeing.

Defendant currently takes medication for high blood pressure, high cholesterol and diabetes. He takes Xanax for panic attacks and sleep difficulty. In the past year and a half, defendant has tested negative for any controlled substances.

As more of a passing hobby, defendant performs in music bands, including Jellyroll and Virtual Horns and Joe Corcoran and the Virtual Horns, Defendant has been performing since he was elven (11) years old. On occasion, defendant performs with his wife. Defendant has performed with many well known artists in the music industry.

**II.     PROCEDURAL BACKGROUND**

On November 30, 2010, Defendant, William Corcoran, Jr. was indicted by a federal grand jury and charged with two (2) counts of "Distribution of Oxycodone", in violation of 21 U.S.C. § 841 (a)(1), (b)(1)(C). On September 14, 2011, a superseding indictment was filed charging defendant with six (6) counts of Distribution of Oxycodone", in violation of 21 U.S.C. § 841 (a)(1), (b)(1)(C). On September 30, 2011, Defendant was released following a detention hearing before Magistrate Judge Thomas J. Ruetter, upon conditions. On October 20, 2012, defendant was arraigned on all charges in the superseding indictment and entered a plea of "not

guilty".

On March 29, 2012, Defendant, William Corcoran, Jr., entered a guilty plea to all of the charges in the superseding indictment. Sentencing was originally scheduled for July 10, 2012. The sentencing has been rescheduled several times and is currently scheduled for July 8 2013 at 11:00 a.m.

There are approximately thirty-six (36) other individuals who have been charged with various acts of the illegal distribution of prescription controlled substances. The following are the names, docket numbers and court dates:

> John D'Agostino (09-cr-774)(September 17, 2013 – Sentencing); Roy Langley (09-cr-776)(July 24, 2013 – sentencing); Joseph Anthony Salvato (09-cr-777)(07/08/13 – Sentencing)  Ralph John Highley (10-cr-194)((07/15/13 – sentencing); Craig Steckel (09-cr-775)(10/17/13 – sentencing); Richard Sommers (10-cr-719)(07/25/13 – sentencing); Robert Bromley (10-cr-720- motions); John Mozzani (11-cr-526)(07/30/13 – sentencing); John Fitzpatrick (11-cr-521)(09/25/13 – sentencing); Charles Haux (11-cr-524)(07/15/2013 – sentencing); Mark Reese (11-cr-528)(Trial); Francis King (11-cr-530)(09/09/13 – sentencing); Amanda Jarrell (11-cr-523)(05/6/13?); Stephen Ellis (11-cr-519)(09/30/13 – sentencing); Margaret Mozzani (11-cr-522)(07/30/13 – sentencing); Jonathan Sullivan (11-cr-525)(trial); Mark Robertson (11-cr-529)(trial); Kevin Bishop (11-cr-527)(09/25/13 – sentencing); William Mann (11-cr-520)(Trial); Daniel Thomas Sullivan (10-cr-195)(change of plea – 07/29/13); and Gerry McKenzie (09-cr-773)(07/10/2013 – sentencing).

It appears William Corcoran is the first defendant of the "distributors" to be sentenced out of the above identified defendants.

### III.   FACTUAL BACKGROUND

This case involves the distribution of prescription medications at Boeing Company located in Ridley Park, Pennsylvania. The defendant sold approximately 148 Oxycontin 40 mg tablets and 88 Endocet 10 mg tablets over the course of six (6) transactions from August 10, 2010 to May 16, 2011. The total amount of pills sold was 236 and the total amount of money

3

received was $2,720.00; however, most of the funds were for Mr. Corcoran's supplier, not him.

On August 10, 2010, defendant sold approximately 40 Oxycontin 40 mg tablets to an confidential source at Boeing and received the sum of $520.00.  That same day, defendant sold 10 Oxycontin 40 mg tablets to another confidential source at Boeing.  Defendant received the sum of $130.00.  On November 23, 2010, defendant met with the first buyer, at Boeing, and sold 48 Endocet 10 mg tablets for $400.00.  On November 29, 2010, defendant met with the same confidential source at Boeing and sold 48 Oxycontin 40 mg tablets for $650.00.  On December 22, 2010, defendant met with the first confidential source at Boeing and sold 40 Endocet 10 mg tablets for $320.00.  Finally, on May 16, 2011, defendant met with the same confidential source at Boeing and sold 50 Oxycontin 40 mg tablets and received the sum of $700.00.  The conversion of the pills to marijuana reveals an approximate weight of 45.56 kg. Again, even though defendant received those funds, most of them were given to his supplier who had fronted pills for Mr. Corcoran to sell. In most situations, the defendant would be compensated mostly by in kind exchanges of the controlled substances.

Lastly, defendant agreed that he willfully obstructed the administration of justice during this investigation.  When the agents sought to speak with Corcoran about the subject offense, he indicated that he wanted to speak to an attorney.  He was told not to mention the investigation to anyone at Boeing.  Instead of calling an attorney to seek advice, defendant spoke to a friend of his at Boeing. This occurred within one (1) hours of him speaking with the agents.

### III.    SENTENCING CADRE

In United States v. Booker, 543 U.S. 220, 125 S. Ct. 938 (2005), our nation's highest court held that the United States sentencing guidelines violate the Sixth Amendment to the

Constitution. As this Court is aware, the Booker decision determined that the guidelines are advisory, and in so doing significantly altered the sentencing regime that has existed since 1987.

The Booker Court stated that the Sentencing Reform Act "required a sentencing court to consider [advisory] guideline ranges (See 18 U.S.C. § 3553 (a) (4), but it permits the court to tailor the sentences in light of other statutory concerns as well". United States v. Booker, 543 U.S. at 245-246. Clearly, a district court's primary objective should be to impose a sentence in light of all the statutory sentencing factors within the context of each defendant's case and the court may impose a sentence without regard to the sentencing guideline range. The Court recognized in United States v. Coleman, 431 F.3d 154, 158 (3d. Cir 2006) that the "guidelines recommended range may be modified or disregarded by a district court upon consideration of other sentencing factors Congress had identified in § 3553 (a)." As stated by Judge Adelman:

> Sentencing will be harder now because District Courts cannot just add up figures and pick a number with a narrow range. Rather, they must consider all of the applicable factors, listen carefully to defense and government counsel, and sentence their person before them as an individual. Booker is not an invitation to do business as usual.

United States v.Ranum, 353 F. Supp 2d 984, 986 (E.D. Wis 2005).

More recently, the Supreme Court reaffirmed the district court's discretion to impose a sentence consistent with consideration of all § 3553 factors. In United States v. Rita, 551 U.S. 338 (2007), the Court held that while a guideline sentence on appeal may be presumed reasonable, the sentencing court does not enjoy the benefit of a legal presumption that the guidelines sentence should apply. Id.

In the Third Circuit, the district courts follow a three-step process:

> (1) Courts must continue to calculate a defendant's Guidelines sentence precisely as they would have before Booker.

5

>    (2) In doing so, they must formally rule on the motions of both parties and state on the record whether they are granting a departure and how that departure affects the guidelines calculation, and take into account our Circuit's pre-<u>Booker</u> case law, which continues to have advisory force.
>
>    (3) Finally, they are required to exercise their discretion by considering the relevant § 3553 (a) factors… in setting the sentence they impose regardless whether it varies from the sentence calculated under the guidelines.

<u>United States v. Gunter</u>, 462 F.3d, 243, 247, (3d Cir 2006) (emphasis added). To determine whether a variance is warranted, a sentencing court must decide whether the guideline range represents an appropriate sentence in light of § 3553 (a)'s mandate. This Court may decide the following:

>    that the Guidelines sentence should not apply, perhaps because (as the Guidelines themselves foresee) the case at hand falls outside the "heartland" to which the Commission intends individual Guidelines to apply U.S.S.G. §5K2.0, perhaps because the Guidelines sentence itself fails properly to reflect § 3553(a) considerations, or perhaps because the case warrants a different sentence regardless. See Rule 32(f). Thus, the sentencing court subjects the defendant's sentence to the thorough adversarial testing contemplated by federal sentencing procedure.

<u>See</u> <u>United States v. Gunter</u>, *supra*. Today the Courts are free to disagree, in individual cases, with the recommended guideline range, and instead impose a sentence that is reasonable supported by the § 3553 (a) factors and which is sufficient but not greater than necessary.

This language seems to clearly indicate that in the critical third step of the sentencing analysis, district courts must apply their own independent judgment to the sentence to be imposed in light of the sentencing factors, yet they do not need to pay heed to whether their judgment results in a sentence within the advisory Guideline range. <u>See</u> <u>United States v. Vampire Nation</u>, 451 F.3d 189, 196 (3d Cir. 2006)("the Guidelines are now only one factor among many which can influence a discretionary sentence. Application of [an advance notice requirement for

sentences outside the applicable Guideline range] would elevate the advisory sentencing range to a position of importance that it no longer can enjoy"); see also United States v. Coleman, 451 F. 3d 154, 158 (3d Cir. 2006) ("the Guidelines' recommended range may be modified or disregarded by a district court upon consideration of the other sentencing factors Congress has identified in § 3553 (a)").

    A.    **Calculation of Guideline Sentence.**

Defendant, William Corcoran has been charged and has pled guilty to six (6) counts of distribution of Oxycodone. Although the aggregate number of pills (and doses) is relatively small (less than 250), the nature of the substance converts to 45.56 kilograms of marijuana. The offense to which defendant pled guilty states as follows:

According to 18 U.S.C. § 841:

> (a) Unlawful acts. Except as authorized by this title, it shall be unlawful for any person knowingly or intentionally—
>
> (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance

    1.    **Base Level Offense**

Pursuant to the United States Sentencing Guidelines, a violation of section 841 results in a base level offense of twenty (20).  See U.S.S.G. § 2D1.1©(10).

    **2.**    **Specific Offense Characteristics**.

Pursuant to U.S.S.G. § 5C1.2, entitled "Limitation on Applicability of Statutory Minimum Sentence in Certain Cases":

> Except as provided in subsection (b), the case of an offense under 21 U.S.C. 841, 844, 846, 960 or 963, the court shall impose a sentence in accordance with the applicable guidelines without regard to any statutory minimum sentence, if the court finds that the defendant meets the criteria in 18 U.S.C. 3553(f)(1)-(5) set

forth below:

(1) the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines . . .;

(2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;

(3) the offense did not result in death or serious bodily injury to any person;

(4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. 848; and

(5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

U.S.S.G. § 5C1.2 ([l]imitation on Applicability of Statutory Minimum Sentences in Certain Cases.

Defendant, Corcoran does not have any prior record and would have no criminal points and would Category I.  Secondly, this crime did not involve violence or the threat of violence only the distribution of oxycodone on six (6) separate occasions.  Thirdly, the offense of distribution of a controlled substance did not result in the death or serious bodily injury of any person.  Fourth, defendant was not an organizer, leader, manager or supervisor of this offense nor was he engaged in a continuing criminal enterprise. While acknowledging his culpability for his action, Mr. Corcoran was never considered to be and should not be considered to be, by this Honorable Court as any sort of leader in this conspiracy.

Finally, the defendant has provided truthful information to the government regarding his

involvement in this matter as well as other matters.  Defendant has cooperated with the authorities in their investigation of this matter and other matters.  Defendant met with the authorities on numerous occasions providing truthful information.  Defendant has fully and completely complied with the sentencing guidelines.  Accordingly, it is respectfully submitted Defendant, William Corcoran, Jr., is eligible under U.S.S.G. § 5C1.2.

Secondly, if this Honorable Court finds defendant is eligible under the aforementioned guideline, this Honorable Court shall reduce the offense level by two (2) levels.  Pursuant to U.S.S.G. § 2D1.1(b)(16), "[i]f the defendant meets the criteria set forth in subdivisions (1)-(5) of subsection (a) of § 5C1.2 (Limitation on Applicability of Statutory Minimum Sentences in Certain Cases), decrease by 2 levels."[1]

Therefore, the application of the guideline would result in a two level reduction which in turn would bring defendant, Corcoran's adjusted offense level to a 18.  Accordingly, this results in a two (2) level decrease of the base offense level.

### 3. Acceptance of Responsibility.

In the case at bar, defendant, William Corcoran has clearly accepted responsibility for his role in this criminal enterprise.  Further, defendant entered a plea of guilty and clearly acknowledged his role.  Pursuant to the U.S.S.G. § 3E1.1:

> (a) If the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by 2 levels.
>
> (b) If the defendant qualifies for a decrease under subsection (a), the offense level determined prior to the operation of subsection (a) is level 16 or greater, and upon motion of the government stating that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities

---

[1] In the Pre-Sentence Investigation Report dated June 20, 2013, Probation Officer Michael Lott cites to U.S.S.G. 2B1.1(b)(16), at ¶ 26; obviously, this is a reference to U.S.S.G. 2D1.1(b)(16).

>of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently, decrease the offense level by 1 additional level.

Additionally, Defendant, William Corcoran has assisted the authorities in not only investigating his own misconduct but in the misconduct of others. Also, defendant has timely notified the government of his intention to enter a plea of guilty and allowing the government to best use their resources to investigate other individuals who may have some further culpability.

Therefore, Defendant, William Corcoran is entitled to a three (3) level reduction for this acceptance of responsibility / assistance in investigation. This reduces the total offense level to fifteen (15).

### 4. Guideline Calculation.

Accordingly, the total offense level for Defendnt, William Corcoran is a fifteen (15), which translates to a guideline range of eighteen (18) to twenty-four (24) months.

### B. Variance From the Guidelines

Defendant, William Corcoran, Jr. does not seek any downward variances from the sentencing guidelines. However, the government is seeking an upward variance of two levels based on the fact "defendants conduct endangered the lives of our men and women who serve in the United States Military."

Beginning in 1986, defendant began working at the Boeing Company as a plaster pattern maker, ultimately becoming a maintenance carpenter, and working specifically in the wood shop. During the times of this investigation and of his offenses, defendant worked in the woodshop and not on any military equipment. In fact, the production and assembly of the aircraft happened in other buildings across the road from where defendant engaged in his carpentry. Defendant

neither worked on the design, production, assembly or testing of the CH-47 Chinook and/or the V-22 Osprey or any of their parts, especially any sensitive or electronic parts.  Further, defendant Corcoran was not involved in the use of heavy machinery either.  Defendant submits that he would never endanger the lives of the men and women serving in our military.  Lastly, there is no specific evidence as to this defendant, William J. Corcoran, Jr., a/k/a Jelly Roll that he endangered the lives of anyone in our military and serving our country.  The court should reject the request for an upward variance which is sought by the government.  There is simply no basis in fact for such a request.

Finally, once Defendant was arrested, he was suspended from work in the fall of 2011 after having worked at Boeing twenty-five (25) years.  His work history has no mention of safety violations or any reckless conduct. In fact, Boeing permitted Mr. Corcoran to retire from the company, which he did in February, 2012.

    **C.**    <u>**Application of the Section 3553(a) Factors.**</u>

Finally, this Honorable Court is required to consider the factors which are set forth in section 3553(a) before imposing a sentence upon a defendant.  The factors are, as follows:

> The court shall impose a *sentence sufficient, but not greater than necessary*, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider--
>
> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;

>> (C) to protect the public from further crimes of the defendant; and
>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for--
>
>> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—
>
> * * *
>
> (5) any pertinent policy statement—
>
> * * *
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

Application of the guidelines to the facts in the case of William Corcoran reveals the following:

**1.      The Nature and Circumstances of the Offense and History and Characteristics of William J. Corcoran, Jr.**

Defendant, William J. Corcoran, Jr., is fifty-seven (57) years of age. Beginning in 1986, defendant began working at the Boeing Company as a plaster pattern maker, ultimately becoming a maintenance carpenter, and working specifically in the wood shop. Defendant was suspended in 2011 after having worked at Boeing twenty-five (25) years. He retired from Boeing in February, 2012. Defendant is currently in his second marriage and has five (5) children in total, the youngest being twelve and five. Defendant provides some financial support for his mother who is seventy-seven (77) years of age. Defendant takes medication for various

physical issues. Prior to his arrest, defendant was performing in various music bands along with his wife. At the time of his arrest and for some time prior, defendant developed a dependency to alcohol and to prescription pills. Clearly, defendant received money from the sale(s) of these pills to the confidential sources. However, defendant would receive pills for his role in selling pills to workers in the maintenance and painting departments. Defendant's prior record all reflects lapses due to alcohol abuse and dependency which does not appear to have been properly treated.

Clearly, defendant had many opportunities to take advantage of the plethora of substance abuse benefits while employed at Boeing and failed to do so. As this Court may very well recognize, such is part and parcel of substance abuse. The abuser generally the last to recognize he needs help. This should not be looked upon as a failure on the part of the defendant, only that he was either too weak to ask for help or truly believed he did not have a problem. It was only after he was caught that defendant managed to come to terms with his addictions. Defendant made the conscious decision to engage in this behavior while at work, however, he never presumed his actions would have a ripple effect on anything he was doing for the government while at Boeing.

  **2.** **The Need for the Sentence Imposed to Reflect the Seriousness of the Offense, to Promote Respect for the Law and to Provide Just Punishment for the Offense.**

Axiomatically, any sentence the court imposes upon the defendant will punish him for his role in this offense and the distribution of pills to other employees at Boeing. Defendant had been employed at Boeing for at least twenty-six (26) years with an unblemished record. The fact he lost his job, endangered his pension which he worked so hard for and is facing the prospect of

incarceration all reflects the seriousness of distributing pills at a work place facility.  Any sentence imposed will reflect the seriousness of the crime committed by Mr. Corcoran; the sentence does not need to be excessive in order to be reflective of same.  The fact defendant has been arrested, suspended and ultimately parting ways with Boeing all should promote respect for the law and should be a blue print to others of what may happen to you and your loved ones if you decide to use your employment as a means to conducting illegal activity.

    **3.**    **The Need to Afford Adequate Deterrence to Criminal Conduct and to Protect the Public from Further Crimes of the Defendant.**

Obviously, the type of conduct which was being engaged upon at Boeing was not acceptable and defendant should be punished accordingly.  However, defendant does not need to be punished to the extent the government seeks as the fact the defendant has already lost his job should be an adequate deterrence enough to others to refrain from similar conduct  Moreover, defendant, Corcoran would not be expected to commit future crimes based upon his prior criminal history, his employment record and family background.  Defendant appears to be dealing with the issues which led him into this most unfortunate set of circumstances.

    **4.**    **The Need to Provide the Defendant with Educational and Vocational Training, Medical Care or Other Correctional Treatment in the Most Effective Manner.**

Clearly, defendant believes he would benefit from substance abuse treatment.  However, in order to achieve this result, defendant would not be required to be incarcerated to obtain this treatment.  Defendant could receive medical care, substance abuse treatment and other correctional treatment in the most effective manner from a non-custodial facility.

    **5.**    **The Guidelines and Policy Statements Issued by the Sentencing Commission.**

Obviously, the guidelines in this case address the seriousness of the offense by indicating

that the base level offense is a twenty (20). Moreover, the guidelines address the seriousness of the offense by establishing that the sale of 236 pills is equivalent to 45.56 kg. The policy underlying the sentencing guidelines is to address issues like the situation at bar. The guidelines also take into account any specific event characteristics, acceptance of responsibility and an additional adjustment for acceptance of responsibility. Lastly, the guidelines do not address nor should they address whether defendant put the lives of the servicemen and women at risk.

### 6. The Need to Avoid Unwarranted Sentence Disparities Among Defendants with Similar Records who have been Found Guilty of Similar Conduct.

In this case, as noted above, there are a number of defendants involved in the same or similar type conduct. The docket numbers and sentencing dates have been provided. Mr. Corcoran is the first defendant to be sentenced. The issue of whether to apply the upward variance will be first examined as it relates to this defendant, however, defendant would submit that the variance should not apply across the board. Each case should be looked at upon its own facts to determine whether the variance is appropriate. In this case, defendant does not believe the variance is applicable based upon the type of work he was performing while employed at Boeing.

### 7. The Need to Provide Restitution to any Victims of the Offense.

In this case, restitution does not appear to be an issue to any of the victims of defendant's distribution of Oxycodone.

Therefore, it is specifically requested this Honorable Court impose a sentence that is sufficient in meeting out justice, however, a sentence that is not greater than necessary to mete out said justice.

**IV.   CONCLUSION**

For the foregoing reasons, the defendant respectfully submits that a sentence be given to William Corcoran that is sufficient but not greater than necessary, to comply with the advisory guidelines, other considerations and the statutory directives set forth in 18 U.S.C. § 3553 (a).


s/RANDOLPH L. GOLDMAN, ESQUIRE
I.D. #:  23307
1420 Walnut Street, Suite 1400
Philadelphia, PA  19102
(215) 731-1200

Attorney for Defendant, William Corcoran

Date:   June 27, 2013

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| UNITED STATES OF AMERICA | :Criminal No. |
| | : |
| v. | :10-cr-0721-01(CDJ) |
| | : |
| WILLIAM CORCORAN | : |

**CERTIFICATE OF SERVICE**

I, **JONATHAN J. SOBEL, ESQUIRE**, attorney for Defendant, William Corcoran, hereby certify as follows:

1. I am an attorney at law in the Commonwealth of Pennsylvania and attorney for Defendant, William Corcoran, in the above captioned matter.

2. On the date indicated below, I caused an original of the Sentencing Memorandum, along with this Certification of Filing and of Service to be electronically filed with the Clerk, United States District Court for the Eastern District of Pennsylvania.

3. Also, on the date indicated below, I caused a courtesy copy of the aforementioned documents to be served on:

> Ashley Kruidenheimer Lunkenheimer, Assistant United States Attorney
> **UNITED STATES ATTORNEY'S OFFICE**
> 615 Chestnut Street, Suite 1250
> Philadelphia, PA 19106-4476

via electronic filing, only.

4. I certify that the foregoing statements made by me are true. I am aware that if any of the statement made by me are willfully false, I am subject to punishment.

<u>s/RANDOLPH L. GOLDMAN, ESQUIRE</u>
I.D. #: 23307
1420 Walnut Street, Suite 1400
Philadelphia, PA 19102
(215) 731-1200

Attorney for Defendant, William Corcoran

Date: June 27, 2013